IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROBERT ANTHONY NICHOLS, ) | |
| ) | C/A No. 4:06-1702-TLW-TER |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| WARDEN EASEL TAYLOR; and ) | |
| HENRY McMASTER, ATTORNEY ) | |
| GENERAL OF SOUTH CAROLINA, ) | |
| ) | |
| Respondents. ) | |
| ) | |

Petitioner, Robert Anthony Nichols ("Petitioner/Nichols"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on June 6, 2006. Respondents filed a motion for summary judgment on September 5, 2006, along with a return and supporting memorandum. The undersigned issued an order filed September 6, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on October 10, 2006.

## I. PROCEDURAL HISTORY

The procedural history as set forth by the respondents in their memorandum has not been

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

seriously disputed by the petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the respondents.

Petitioner is presently confined to McDougall Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Georgetown County. At the January 13, 2000, term of the Court of General Sessions, the Georgetown County Grand Jury indicted petitioner for grand larceny. (App. p. 91). Petitioner also was indicted on car jacking and kidnaping. (App. p. 2). The charges stem from the two incidents on August 29, 1998, where automobiles and other personal property were taken from two individuals.

Petitioner was represented at the trial level by Robert Maring, Esquire. On May 30, 2000, petitioner appeared before the Honorable Howard P. King and pled guilty pursuant to a negotiated plea to grand larceny and car jacking. Judge King sentenced petitioner to ten (10) years imprisonment for grand larceny and ten (10) years imprisonment, concurrent, for car jacking. Petitioner did not appeal his conviction or sentence.

Petitioner next filed a *pro se* Application for Post-Conviction Relief ("APCR") on May 24, 2001 (01-CP-22-323). (App. pp. 20-24). The State filed a Return on December 21, 2001. (App. pp. 25-29). In his APCR, petitioner raised the following allegations:

1. "Attorney failed to obtain ruling on illegal search and seizure motion;"

2. "After Applicant sat in jail for 15 months and on day of trial on Grand Larceny charge, car jacking charge was brought against Applicant based solely on allegations of career criminal cell-mate and Attorney failed to move to dismiss charge based on lack of evidence; in any event, facts alleged do not support charge of car jacking since there was no evidence of use of a weapon, force or intimidation (attempted grand larceny only);"

3. "Attorney failed to advise Applicant that the charge of car jacking was non-par[olable]. Applicant would not have pled guilty had this been known."

2

An evidentiary hearing in petitioner's APCR was held before the Honorable Paula H. Thomas on June 20, 2002. Petitioner was present and represented by Leigh Taylor Powers, Esquire. The State was represented by Edgar R. Donald, Jr. At the outset of the hearing, petitioner's counsel informed the court he would be proceeding on one issue at the hearing:

> Mr. Nichols attorney, Robert Marring, failed to advise him of the community supervision program and the maximum amount of time that he would be facing under that program. (App. p. 34, lines 11-14).

Petitioner testified on his own behalf and the State presented the testimony of trial attorney Marring. On November 21, 2002, Judge Thomas issued a written Order of Dismissal in which she rejected petitioner's claim for relief. (App. pp. 59-62).

Petitioner filed a Motion to Alter or Amend Judgment on October 30, 2003. The State filed a Return and Motion to Dismiss the motion to alter or amend dated November 21, 2003. On December 16, 2003, Judge Thomas filed an Order Denying Applicant's Motion to Alter or Amend Judgement, Rule 59(B) in which she re-affirmed and incorporated her previous Order dated November 21, 2002. (App. pp. 64-88).

A timely notice of appeal was filed with the state supreme court from the Order of Dismissal in the PCR action. On PCR appeal, petitioner was represented by Robert M. Dudek, Esquire, of the South Carolina Office of Appellate Defense. On June 11, 2004, counsel filed a *Johnson* Petition for Writ of Certiorari and a Petition to be Relieved as Counsel, in which he raised the following issue on behalf of petitioner:

> Should petitioner's guilty plea be vacated where the judge affirmatively stated he was not going to order restitution because that would entail petitioner serving probation, and where petitioner's

3

> attorney told him the plea involved a "no-parole offense," since petitioner testified that he had never been able to successfully complete probation or parole, and that he never would have accepted the guilty plea if he knew a CSP was mandated upon his release?

Additionally, petitioner filed a "*Pro Se* Response," presenting the following issue:

> Should the Petitioner's sentence be vacated because the Circuit Court lacked the jurisdiction to sentence the Petitioner to a sentence under a statutory scheme that exposes him to a harsher penalty than the prescribed statutory maximum for the instant offense in violation of his Due Process rights under the Sixth (6th) and Fourteenth (14th) Amendments to the United States Constitution?

The South Carolina Court of Appeals issued an Order dated December 5, 2005, in which it denied the petition for writ of certiorari and granted counsel's request to withdraw from further representation. The Remittitur was sent down on December 21, 2005.

## II. HABEAS ALLEGATIONS

Petitioner raised the following allegation in his habeas petition:

Ground One:   Ineffective Assistance of counsel in relation to the Community Supervision Program.

(Petition).

## III.  SUMMARY JUDGMENT

On September 5, 2006, respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner filed a response.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### IV. STANDARD OF REVIEW

Since Nichols filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified

procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The respondents assert that the petitioner's claims must be dismissed as untimely. Specifically, respondents contend the petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondents argue as follows, quoted verbatim:

> Since Petitioner did not file a direct appeal, his conviction was finalized by the conclusion of direct review on June 9th, 2000, or ten (10) days after his sentence was given by Judge King. Rule 203(b)(2), SCAR. Because Petitioner did not file a direct appeal, the ninety (90) day period for seeking certiorari from the United States Supreme Court is not included. *See, e.g.* **Harris v. Hutchinson**, 209 F.3d 325 (4th Cir. 2000) (direct review concludes at expiration of time for seeking certiorari from United States Supreme Court);28 U.S.C. § 1257 (United States Supreme Court can only review on certiorari the final judgments of "highest court of a state"); U.S. Sup. Ct. R. 10(b) (certiorari considered where "state court of last resort" has decided important federal question); U.S. Sup. Ct. R. 13 (time period for petition for writ of certiorari is 90 days from decision or judgment of state court of last resort); Rule 203(b)(2), SCAR (10 day requirement for filing of Notice of Appeal from criminal conviction). Petitioner thus had until June 9th, 2001 to file his federal habeas corpus action, unless the period was at any time tolled. *See, e.g.* **Hernandez v. Caldwell**, 225 F.3d 435 (4th Cir. 2000); **Harris**, *supra*; **Brown v. Anemone**, 150 F.3d 370 (4th Cir. 1998).
>
> Since Petitioner did not file his APAR until May 24th, 2001, three hundred and forty-nine (349) days of non-tolled time passed between the conclusion of direct review and the filing of the APAR. The habeas corpus period of limitations was tolled during the pendency of the APAR at most until December 21st, 2005, when the South Carolina Court of Appeals issued the Remittitur from the denial of certiorari from the APAR Order of Dismissal. *See*, *e.g.* **Out v.**

> *Johnson*, 192 F.3d 510 (5th Cir. 1999) (tolling does not include 90 days for United States Supreme Court certiorari petition from final denial by state's highest court of collateral action); *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000) (running clock from when state appellate court denied leave to appeal denial of state post-conviction petition).
>
> Petitioner's "delivery date" for the present action is June 2nd, 2006. Therefore, a further total of one hundred and sixty-three (163) days of non-tolled time between the South Carolina Court of Appeals' disposition of the APAR appeal and the filing of this habeas petition. Aggregating the two periods on either side of the pendency of the APAR action equals exactly five hundred and twelve (512) days, which is well in excess of one year. Therefore, the present Petition for Writ of Habeas Corpus is time-barred and should be denied and dismissed.

(Memorandum).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[2]  Subsection (d) of the statute now reads:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> > (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)  the date on which the impediment to filing an

---

[2] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

> application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a "properly filed" application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, petitioner did not file a direct appeal. Therefore, his conviction became final by the conclusion of direct review on June 9, 2000, or ten (10) days after his sentence was given. Petitioner had until June 9, 2001, to file his federal habeas corpus petition unless the time was tolled. Petitioner filed his application for PCR on May 24, 2001. Therefore, three hundred and forty-nine (349) days of non-tolled time passed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR . The South Carolina Court of Appeals issued its remittitur on December 21, 2005, from the denial of certiorari from the PCR Order of Dismissal. Petitioner did not filed this habeas corpus petition until June 2, 2006, the Houston v. Lack delivery date. Therefore, there was a total of one hundred and sixty-three (163) days of non-tolled time between the decision of the South Carolina Court of Appeals and the filing of this habeas petition for a total of five hundred and twelve (512) days. Thus, the time is well outside the limitations

period.

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

Additionally, there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair

> accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Petitioner has not presented (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time. Rouse, supra. Therefore, it is recommended that the petition be dismissed as it is barred by the statute of limitations.

Based on the above reasons, the undersigned finds that the respondents' motion for summary judgment (document #10) should be granted as the petitioner's habeas corpus petition is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates the petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that respondents' motion for summary judgment (document #10) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 30, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

12